450 So.2d 17 (1984)
FAUSTINA PIPE LINE COMPANY, Plaintiff-Appellant,
v.
Minos J. BROUSSARD, et al, Defendants-Appellees.
No. 83-597.
Court of Appeal of Louisiana, Third Circuit.
April 11, 1984.
Writ Denied June 8, 1984.
*18 Sonnier & Hebert, Charles R. Sonnier, Abbeville, Broadhurst, Brook, Mangham, Hardy & Reed, Michael J. O'Shee and Michard R. Mangham, Lafayette, for plaintiff-appellant.
Thompson, Sellers & Bundick, Roger C. Sellers, Abbeville, for defendants-appellees.
*19 Before GUIDRY, FORET and CULPEPPER[*], JJ.
FORET, Judge.
This is an appeal in an expropriation suit. Plaintiff-appellant, Faustina Pipe Line Company, brought suit to expropriate a pipeline servitude across the land of defendant-appellee, Minos J. Broussard. Also made defendant was Ricky Broussard, Minos J. Broussard's tenant on the land sought by Faustina. As a result of defendants' failure to timely answer plaintiff's petition, the only issue at the first phase of the trial was the amount of compensation that plaintiff should pay. The trial court awarded defendants compensation in the amount of $5,806.65. Plaintiff appealed this judgment. Following the filing of this appeal, the trial court rendered a judgment ordering plaintiff to pay attorney's fees and court costs. Plaintiff also appealed this decision. Both appeals have been consolidated for decision and all issues are dealt with in this opinion[1].
Several issues are presented by this consolidated appeal:
(1) Whether the trial court erred in accepting defendants' witness as an expert.
(2) Alternatively, whether the lower court erred in giving greater weight to the testimony of defendants' expert.
(3) Whether the trial court erred in its determination of the highest and best use of the property taken.
(4) Whether the court erred in its determination of the value of the land taken, and the compensation due defendant, Minos J. Broussard, for the permanent and temporary servitudes granted to plaintiff.
(5) Whether the lower court erred in awarding severance damages to defendant, Minos J. Broussard.
(6) Whether the trial court's award of attorney's fees was excessive.
(7) Finally, in the event that this Court reduces the trial court's award to a sum less than that offered by plaintiff prior to trial, whether this Court should assess court costs against defendants and eliminate the award of attorney's fees.

FACTS
Plaintiff, Faustina Pipe Line Company, is a foreign corporation doing business in the State of Louisiana. It is a corporation created for and engaged in the business of piping and marketing natural gas. Plaintiff plans to construct a natural gas pipeline which will begin near the Bayou Henry Gas Plant in Vermilion Parish and run approximately fourteen miles to a point within Lafayette Parish, where it will branch into two segments.
One of the tracts of land across which plaintiff seeks a pipeline servitude is owned by defendant, Minos J. Broussard. This tract contains approximately twenty-one acres and is situated in Vermilion Parish, along the west side of Highway 339 (a hard-surfaced highway) one and one-half to two miles north of the town of Erath. A brick veneer home and other minor improvements are located on the front portion of the property near the highway. The back portion of the property where the pipeline will run is presently used for agricultural purposes. Minos J. Broussard's tenant, Ricky Broussard, also a defendant in this suit, raises soybeans on this portion of the property. There are already four pipelines which run in a parallel fashion across this part of defendant's land. Plaintiff proposes to construct its pipeline on the west side of and immediately adjacent to these other pipelines.
Plaintiff and defendant, Minos J. Broussard, were unable to agree on the amount of compensation for the servitude which *20 plaintiff sought. Plaintiff brought expropriation proceedings. Since defendants did not answer plaintiff's petition timely, they were precluded from contesting plaintiff's right to expropriate the pipeline servitude. The only issue at trial was the amount of compensation that plaintiff should pay.
In a judgment signed April 11, 1983, the trial court ordered the expropriation of a permanent pipeline servitude and the temporary servitude for its construction. The court also ordered plaintiff to pay compensation in the following amounts:
 To Ricky Broussard, $320 for crop damage;
 To Minos J. Broussard, $80 for crop damages,
 $2,476.09 for the permanent
 pipeline servitude
 $2,215.47 as severance
 damages and
 $720 for the temporary
 servitude.
Following the rendition of this judgment, defendants requested that the court order plaintiff to pay attorney's fees and court costs. Prior to the trial, plaintiff's highest offer to defendants was $1,955$3,851.65 less than the amount eventually awarded by the trial court. In a judgment rendered June 2, 1983, the trial court ordered plaintiff to pay $4,410 in attorney's fees and all court costs, including $1,000 in expert fees.

TRIAL COURT'S QUALIFICATION OF DEFENDANTS' WITNESS AS AN EXPERT
Defendants' expert witness, Kearney Dronet, is a licensed real estate broker. He has extensive experience dealing with real estate in the area where defendant's property is located and is familiar with local conditions. See Maddox v. Percy, 351 So.2d 1249 (La.App. 1 Cir.1977), writ denied, 353 So.2d 1336 (La.1978). Mr. Dronet has developed property in the area since 1951 and has been a contractor since 1967. Since becoming a broker in 1979, he has done appraisals.
In its brief, plaintiff complains that Dronet had only completed two of a number of courses required to qualify him as a member of the American Society of Real Estate Appraisers. We find that Dronet's lack of certain formal training did not disqualify him as an expert. His extensive experience in the local real estate market was sufficient reason for the court's decision to accept him as an expert witness.
"Structured-learning in a school-setting has never been the sole manner in this country for the acquisition of expertise in a specific field."
Maxwell v. State, Department of Transportation & Development, 391 So.2d 1230 (La.App. 1 Cir.1980), writ denied, 394 So.2d 281 (La.1980). The qualification of an expert witness rests within the sound discretion of the trial judge and his determination will not be disturbed absent a showing of manifest error. Matter of Aaron, 417 So.2d 105 (La.App. 3 Cir.1982); Roberts v. Tiny Tim Thrifty Check, 367 So.2d 64 (La. App. 4 Cir.1979); Maddox v. Percy, supra; Sledge v. Aluminum Specialties Manufacturing, Inc., 351 So.2d 835 (La.App. 1 Cir.1977). In the instant case, the trial judge acted properly in accepting defendants' witness as an expert.

WEIGHT GIVEN TO THE TESTIMONY OF THE EXPERTS
Plaintiff claims that it was error for the trial court to give more weight to the opinions of defendants' expert than it gave to the opinion of its experts.
We note, at the outset, that the trial judge did not give greater weight to the opinion of defendants' expert in deciding many of the issues before it. For example, the trial judge rejected the opinion of defendants' expert that there would be no residual value after the permanent servitude was taken. Rather, the court accepted the opinion of plaintiff's experts that after the expropriation, defendant would still have some use of the property. Plaintiff's experts testified that if the property's highest and best use was for rural homesites, the residual value would be 5% to 10%. In accordance with this opinion, the court set the residual value at 7½%. Additionally, when the trial court set the amount of compensation for the temporary *21 servitude, it specifically said that it was accepting the figure offered by appellees' expert only because it was lower than the amount which would be obtained by using the method suggested by plaintiff's experts, given the market price determined by the court.
In its brief, plaintiff quotes the Supreme Court in Middle Tennessee Council, Inc. v. Ford, 274 So.2d 173 (La.1973) when it says:
"The weight to be given to the testimony of experts is largely dependent upon their qualifications and the facts upon which their opinions are based."
We think that the opinion of the Supreme Court, in regard to this matter, is clearer when this quotation is seen in its context. We think it is also particularly relevant to the present case. Following the portion quoted by plaintiff in its brief, the Supreme Court continues:
"However, the sincerity and honesty of the opinions expressed are matters which the trial judge is in a particularly advantageous position to determine. It is, in effect, in part, a question of credibility, and when the experts are widely disparate in their conclusions, the rule has special relevance." (Emphasis added.)
In the present case, the opinions of defendants' and plaintiff's experts were widely disparate on many points. That the trial judge chose to accept the opinion of defendants' expert, in some cases, was a matter within his discretion. In expropriation cases, much discretion is granted to the trial judge in weighing the testimony of experts. Southwest Louisiana Electric Membership Corp. v. Duhon, 313 So.2d 366 (La.App. 3 Cir.1975), writ refused, 318 So.2d 52 (La.1975).
The court based its valuation of the tract of land on what defendants' expert considered to be his "best" comparable. This tract of land had been sold very recently and was located about three and one-half miles from defendant's property. The trial judge's use of this comparable to establish the per-acre value of defendant's property was a reasonable exercise of his discretion. Similarly, the trial court's decision to accept the opinion of defendants' expert that the highest and best use of the entirety of defendant's property was for rural homesites was supported by the facts as will be discussed presently.
We feel that the decision of the trial court to give more weight to the opinion of defendants' expert, in some areas, is supported by the record.

HIGHEST AND BEST USE OF DEFENDANT'S PROPERTY
Plaintiff contends that the trial court erred in finding that the highest and best use for the entirety of defendant's property was for rural homesites. Plaintiff's experts testified that the best and highest use of the front portion of the tract was for rural homesites. They considered, however, that the back portion's best and highest use was agricultural. Plaintiff claims that the use of the back portion of the tract for rural homesites is too remote to be considered as an element in determining the market value of defendant's land.
The highest and best use of property is the most favorable employment to which it is adaptable and may reasonably be put in the not-too-distant future. Louisiana Resources Co. v. Langlinais, 383 So.2d 1356 (La.App. 3 Cir.1980); State, Department of Highways v. Rapier, 246 La. 150, 164 So.2d 280 (1964). In the instant case, all experts agreed that defendant's property was high and well drained. Defendants' expert testified that he considered the highest and best use of the entire tract was for rural homesites. He based his opinion on the demand for mobile home sites in the area. He testified that of three hundred eighty-nine permits for homesites issued in Vermilion Parish during 1982, over fifty percent were for mobile homes. He further testified that his real estate office in Erath received several calls a day for mobile home sites, but none were available. It was his opinion that defendant's property could be developed for rural homesites, specifically mobile home sites, *22 and that such development would be immediately profitable given the local demand.
Defendants' expert was thoroughly familiar with the local real estate market[2]. His testimony regarding the demand for mobile home sites was uncontested by plaintiff. The trial court's conclusion that it was reasonably possible for defendant's property to be used for rural homesites in the near future was completely justified. Accordingly, we concur in the court's determination that the best and highest use of the entire tract was for rural homesites.

THE COMPENSATION AWARDED FOR THE SERVITUDES
Plaintiff contends that the compensation awarded by the court for the permanent and temporary servitudes was excessive. We disagree.
The trial court fixed the per-acre value of defendant's property based on the value of a tract of land which defendants' expert considered as his best comparable. As mentioned above, this tract had been sold very recently and was about three and one-half miles from defendant's property. Although this tract was improved, defendants' expert adjusted the price to arrive at the per-acre value of the land alone. Using this comparable, the court found that the per-acre value of defendant's property was $8,635.
Based on its decision that the highest and best use of defendant's entire tract was for rural homesites, the trial court set the residual which would remain after the taking at 7½%. In so deciding, the court accepted the opinion of Gene Cope, one of plaintiff's expert witnesses who testified, as noted above, that the residual value of the property would be 5% to 10% if the best and highest use of the entire tract was for rural homesites.
The court set the value of the temporary servitude at $720. This was the amount proposed by defendants' expert. If the method of determining compensation for this servitude proposed by plaintiff's experts had been used, along with the per-acre price found by the trial court, the amount would have been higher. As a result, we find plaintiff's objection to this award to be without merit.
The trial court's determination of the value of expropriated property is a question of fact and carries the same weight as any other finding of fact. Louisiana Resources Co. v. Greene, 406 So.2d 1360 (La.App. 3 Cir.1981), writ denied, 412 So.2d 84 (La.1982); State, Dept. of Highways v. LeBlanc, 388 So.2d 412 (La.App. 1 Cir.1980). The record amply supports the amounts awarded by the Court. We find no error.

SEVERANCE DAMAGES
The trial judge found severance damages in the amount of $2,215.47. It arrived at this figure by finding that there would be a 20% diminution in the value of the land within one hundred twenty-five feet of the west boundary of plaintiff's permanent servitude, this area corresponding to a row of lots in a hypothetical development. He found no severance damages on the east side where there were already four pipelines. This determination of the trial judge was supported by the testimony of the experts and relevant jurisprudence. See Michigan Wisconsin Pipe Line Co. v. Miller, 229 So.2d 182 (La.App. 3 Cir.1969), writ denied, 255 La. 482, 231 So.2d 395 (1970). Plaintiff's own expert, Gene Cope, testified that if the highest and best use of the entire tract was found to be for rural homesites, lots abutting the pipeline servitude would be less desirable.

ATTORNEY'S FEES
The trial court awarded $4,410 in attorney's fees to defendants. Plaintiff contends that this award was excessive. In its brief, plaintiff argues that the *23 amount of attorney's fees should be limited to 25% of the amount which the court awards in excess of the highest amount offered by the expropriator prior to trial[3]. In effect, plaintiff claims that the only factor which the court should consider in awarding attorney's fees is the amount awarded by the court in excess of the expropriator's highest pre-trial offer. This amount is, however, only one element that the court must consider in fixing attorney's fees. Other factors which are equally important are: the responsibility incurred, the importance of the litigation, the amount involved, the extent and character of the work performed, the legal knowledge, attainment and skill of the attorney, the number of appearances made, the intricacies of the facts involved, the diligence and skill of counsel, and the court's own knowledge. State v. Ransome, 392 So.2d 490 (La.App. 1 Cir.1980). Plaintiff's contention that the court should only consider the amount awarded in excess of the expropriator's highest offer is without merit.
In its brief, plaintiff directs this Court's attention to LSA-R.S. 48:453 which limits attorney's fees in highway expropriation cases to "25% of the difference between the award and the amount deposited in the registry of the court". Although recognizing the inapplicability of this statute to the present case, plaintiff, nevertheless, contends that this Court should adopt this statutory limit in the present case. We decline to do so. In its brief, plaintiff cites a number of cases in which it claims the statutory limit of 25% was applied by appellate courts to expropriation cases falling outside of the ambit of LSA-R.S. 48:453. Although in some of these cases, the court did find that attorney's fees amounting to 25% of the excess compensation judgment or less were reasonable, in none of them did the court sanction the idea that this amount should serve as a maximum. LSA-R.S. 19:8 imposes no set ceiling on attorney's fees. Rather, it authorizes the trial court to award reasonable attorney's fees. Clearly, the trial court is empowered to award reasonable attorney's fees even if that means an award greater than 25% of the excess compensation judgment. If the legislature had wanted to limit attorney's fees, in cases like the present one, to 25% of the excess compensation judgment, it could have done so. The fact is, it did not.
The record shows that one attorney for defendants spent a total of 34¼ hours on this suit. Defendants' other attorney spent 17¼ hours. The trial judge is vested with considerable discretion to award attorney's fees. Prentice Oil and Gas Co. v. State, Department of Transportation and Development, 421 So.2d 937 (La.App. 1 Cir.1982), writ denied, 423 So.2d 1165 (La.1982). In the present case, the trial judge was in a most advantageous position to view the skill and effort of defendants' attorneys. Under the circumstances, we feel that the trial judge's award of attorney's fees was within his discretion and we will affirm it.
Plaintiff has asked that we eliminate attorney's fees and assess court costs against defendants in the event we reduce the trial court's compensation judgment to an amount less than plaintiff's highest pre-trial offer. Given our decision set out above, we need not consider this request.
Defendants have answered the appeal and asked this Court to award them additional attorney's fees for the time and effort expended by their attorneys on this appeal. We are of the opinion that the amount of attorney's fees awarded by the trial court is sufficient to compensate the defendants and their attorneys; accordingly, we deny the request for additional attorney's fees for appellate purposes.
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of *24 this appeal are assessed against plaintiff-appellant.
AFFIRMED.
NOTES
[*] Judge William A. Culpepper, Retired, Judge Ad Hoc.
[1] For a separate opinion rendered in 83-867, see Faustina Pipe Line Company v. Broussard, 450 So.2d 24 (La.App. 3 Cir.1984).
[2] Faustina's experts, although highly qualified, had less experience in the local real estate market than defendants' expert.
[3] In the present case, the difference between the court's award and Faustina's highest offer was $3,531.65.